GEORGE L. BARKER AND CAROL JANE BIRD BARKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barker v. Commissioner
Docket No. 17207-79.
United States Tax Court
T.C. Memo 1983-643; 1983 Tax Ct. Memo LEXIS 145; 47 T.C.M. (CCH) 131; T.C.M. (RIA) 83643; October 18, 1983. Donald R. Wellford, for the petitioners. John L. Hopkins, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency in the income tax due from the petitioners for 1975 in the amount of $14,815. The only issue for decision is whether the petitioners realized a capital gain in 1975 in connection with the termination of an interest in two partnerships. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by reference. Petitioners, husband and wife, resided in Tennessee at the time they filed their petition in this case. They filed a joint income tax *147 return for 1975 with the Internal Revenue Service Center at Memphis, Tennessee. Since Mrs. Barker is a party in this proceeding solely because she filed a joint return with her husband, we will hereinafter refer to him as the petitioner. The petitioner has practiced medicine as a diagnostic radiologist since 1961. In 1968 he entered into a medical partnership, called The Medical Group, with several other physicians. In 1972 he and his medical partners formed two other partnerships, The Madison Company and The Jefferson Company. These two partnerships were organized primarily for the purpose of purchasing and holding real estate. At about the same time the medical partners also formed The Greenwood Company, a corporation. The partnership agreements for The Madison Company and The Jefferson Company were substantially similar in their terms and the interests of the partners in the partnerships were substantially identical. Each partnership however was a separate and distinct entity and membership in one was not conditioned upon membership in the other, or upon membership in the medical partnership. Under each partnership agreement a partner could withdraw from the partnership *148 by giving 60 days notice in writing to the other partners. A partner could also be expelled from the partnership upon the decision of all of the other partners and with 60 days written notice to the partner being expelled. In 1973 the petitioner executed and delivered to Union Planters National Bank of Memphis a guaranty agreement under which the petitioner guaranteed the full and prompt payment to the bank of a loan made to The Madison Company of $350,000 plus interest. In 1974 Dr. Barker withdrew from the medical partnership following an incident on Labor Day weekend when the other doctors locked him out of his office. He returned to medical practice as an individual practitioner. He has never given a notice of withdrawal to his partners in The Madison Company and The Jefferson Company and he has never received a notice from such partners that he is being expelled from these partnerships. Following his withdrawal from the medical partnership, Dr. Barker attempted to obtain a financial accounting of his interest in it. He believed that the value of his interest was about $150,000. Having no success in obtaining an accounting, he employed Carl H. Langschmidt, Jr. as counsel *149 and brought suit about the end of 1975 in the Shelby County Chancery Court against his former partners in The Medical Group for an accounting and for payment of his share of the partnership assets. Thereafter, in 1976, 1977, 1978 and in early 1979, petitioner's counsel conferred many times with counsel for the defendant partners in an effort to settle the lawsuit. The negotiations were complicated by the fact that as time passed the petitioner's former partners in the medical partnership caused the partnership returns for The Madison Company and The Jefferson Company for the years 1974 and 1975 to be filed without including him as a partner in the partnerships. During 1974 and 1975 both of these partnerships incurred substantial tax losses and on the partnership returns these losses were allocated in their entirety among the petitioner's former partners. Consequently, in the settlement negotiations with respect to the medical partnership, the defendant partners sought to include in the agreement a termination of the petitioner's interest in the two real estate partnerships as well as his stock ownership in The Greenwood Company. On his part, the petitioner had claimed his portion *150 of the partnership losses on his individual returns for 1974 and 1975; and, therefore, in the settlement negotiations he attempted to retain his interest in the real estate partnerships through 1975. In return for such an agreement by the defendant partners, the petitioner was willing to accept a lower sum than his estimated value of his interest in The Medical Group. The accountants for The Medical Group in a report dated June 1974 had determined that petitioner's interest in the medical partnership had a value of $38,575.58, while the value of his interest in The Greenwood Company was $7,870, and the value of his interest in The Madison Company was $200, and the value of his interest in The Jefferson Company was $1,020. The negotiations with regard to the settlement of the lawsuit over the medical partnership continued until finally the petitioner and his counsel were willing to accept $6,000 in settlement of the lawsuit and all other claims between the parties. This cum represented $4,600 for petitioner's interest in The Medical Group, $200 for his interest in The Madison Company, $200 for his interest in The Jefferson Company, and $1,000 for his stock in The Greenwood Company. *151 The petitioner indicated that he was willing to accept the $6,000 but only with the understanding that: (1) his interest in The Medical Group would be terminated as of June 30, 1974; (2) his interest in The Madison Company and his interest in The Jefferson Company would be terminated as of December 31, 1975; and (3) he could be assured that he would not incur any income tax liability as a result of the settlement. Mr. Langschmidt not being a tax lawyer was unable to give petitioner the assurance of no additional tax liability as a result of the settlement. Langschmidt, however, understood from Kenneth R. Masterson, who was then representing the defendant partners and who was in contact with the Internal Revenue Service with respect to the tax matters of the partnerships, [1] that he (Masterson) could "get it worked out * * * so that there will be not tax." At this point, which was reached in December of 1978, Mr. Masterson drafted a proposed settlement agreement and presented *152 it to petitioner and his counsel. The proposed agreement was essentially as outlined above as being acceptable to the petitioner except that paragraph 5 thereof provided as follows: 5. Release and Indemnification.
* * * The Partnerships further agree that each shall indemnify and hold harmless Barker against any and all debts, liabilities, cause of actions, or claims of any nature, absolute or contingent, of or against said Partnerships excluding, however, all liabilities for Federal Income Taxes which may arise as a result of compliance with the terms and conditions of this Agreement. After reviewing the proposed settlement agreement Langschmidt advised Masterson that the petitioner could not execute the agreement because under the above provision Barker was liable for any income tax due as a result of the settlement and he had not been given assurance that there would be no such tax liability. Masterson urged Langschmidt to go ahead and get the petitioner to sign the agreement because he, Masterson, still thought that he could work it out so that there would be no additional tax due from Dr. Barker as a result of the settlement. Masterson, however, did not wish *153 to redraft the agreement and urged that it be executed as drafted. In reliance upon Masterson's assurances that he could handle the matter with the Internal Revenue Service in such a manner that Barker would not have additional taxes, Langschmidt obtained Dr. Barker's signature on the settlement agreement and transmitted the same to Masterson with a letter dated January 23, 1979. In the transmittal letter Langschmidt noted that the agreement had been signed by Dr. Barker but that it was not to become effective until the same was signed by the defendant partners, the consideration mentioned in the agreement was paid to Dr. Barker, and the Internal Revenue Service had acknowledged that Dr. Barker was a partner in The Madison Company and The Jefferson Company throughout 1974 and 1975 and was entitled to his share of the partnership losses for such years. The transmittal letter did not mention the oral understanding which Langschmidt had with Masterson regarding the assurance that Dr. Barker would not incur any additional income tax by reason of the settlement. The transmittal letter did indicate that Dr. Barker and his counsel expected the agreement of settlement to be dated as of *154 the actual date it was consummated. By letter dated February 27, 1979, Mr. Masterson forwarded to Mr. Langschmidt two fully executed copies of the proposed agreement plus the checks totaling $6,000 which were mentioned therein. By letter dated February 28, 1979, Mr. Langschmidt advised Mr. Masterson that he and his client could not "consider the agreements finally consummated, and will not negotiate the checks." In this letter Langschmidt also requested copies of the tax returns of The Madison Company and The Jefferson Company from their inception to date. By letter dated March 16, 1979, copies of the tax returns of The Madison Company and The Jefferson Company through December 31, 1975 were furnished to Mr. Langschmidt by Mr. Masterson. The this letter Mr. Masterson stated that he could not agree with the statement by Mr. Langschmidt that the agreement was not finally consummated because in his view the agreement was completed and payment had been tendered and he and his clients expected that the pending suit would be promptly dismissed as provided in the agreement. By letter dated March 20, 1979, Langschmidt advised Masterson that he had learned from the Internal Revenue *155 Service that assessments were going to be made and that such assessments were going "to be different than we contemplated, and that our agreement cannot be finally consummated." With this letter Langschmidt returned to Masterson the checks totaling $6,000. With this letter, Langschmidt testified, he was advising Masterson that he had learned from the Internal Revenue Service that Masterson had been unable to get the Service to agree that Dr. Barker would not have some additional tax liability as a result of the proposed settlement. On or about May 25, 1979, the defendant partners in the lawsuit pending before the Chancery Court of Shelby County filed a motion for summary judgment which motion was based upon the aforesaid settlement agreement. This motion as well as the original lawsuit seeking an accounting by Dr. Barker is still pending before the Chancery Court. In a deficiency notice dated September 20, 1979, the respondent determined that for the year ending December 31, 1975 there was a deficiency in the petitioners' income tax liability in the amount of $14,815 because Dr. Barker had realized a capital gain during such year in the amount of $29,086. In the deficiency notice *156 the computation of the capital gain was as follows: Capital Gain
Long-term gain from sale of your
interest in the partnerships,
The Madison Company and The Jefferson
Company: Amount realized: Liabilities assumed by partnerships
$350,000.00 .00 Amount realized, as determined
$350,000.00 Less basis: Personal liabilities in the partnership
$350,000.00 Less your share of partnership losses to
date of sale
(58,172.00)
(291,828.00)
Long-term capital gain from sale of
partnership interest, as determined
$ 58,172.00 Less Code Section 1202 [2] deduction, 50% of
(29,086.00)
$58,172.00
Taxable capital gain, as determined
$ 29,086.00 OPINION The respondent's contention is that effective as of December 31, 1975, the petitioner disposed of his interest in The Madison Company and The Jefferson Company and that in the disposition of his interest in said partnerships he was relieved of his liability for $350,000 to the Union Planters Bank and consequently he had a gain in 1975 of $29,086 as computed in the statutory *157 notice. The petitioner does not dispute that he would have realized in 1975 the gain determined by the respondent if during that year he had withdrawn from The Madison Company and The Jefferson Company and had been relieved of the liability to the bank. He contends, however, that he has not disposed of his interest in The Madison Company and The Jefferson Company, that he has not been relieved of his liability on the $350,000 guaranty to Union Planters Bank and, consequently, he could not have realized the gain in 1975 as determined by the respondent. Respondent's contention is based entirely upon the settlement agreement drafted by Mr. Masterson in December of 1978, signed by Dr. Barker on or shortly before January 23, 1979, and signed by the other parties on or shortly before February 27, 1979. He argues that this is a legally binding and valid agreement in which the parties agreed that Dr. Barker's interest in The Madison Company and The Jefferson Company terminated on December 31, 1975 and that as a result of this termination Dr. Barker was relieved as of December 31, 1975 of any liability on the $350,000 due by The Madison Company to Union Planters Bank. He further argues *158 that since this agreement is in writing and purportedly contains the entire agreement between the parties, parol evidence such as the testimony of Dr. Barker, Mr. Langschmidt, and Mr. Masterson as well as the correspondence between Langschmidt and Masterson is not admissible to vary the specific terms of the written agreement including the effective dates recited therein. At the trial the evidence was admitted under the rule "that parol evidence is admissible to show that a written paper which in form is a complete contract was not to become binding until the performance of some condition precedent which rests in parol." [3] 3 B. Jones, Evidence, sec. 16:40 (6th ed. 1972). Upon further consideration, however, we need not reach a final decision on this issue because whether or not the parol evidence is admitted the petitioners' tax liability for 1975 cannot be altered with an agreement entered into in 1979. The record does not contain a release by Union Planters Bank of Dr. Barker's liability under the guaranty agreement. In fact, no claim is made by the *159 respondent that such a release was ever obtained. Instead the respondent relies upon that part of paragraph 5 of the settlement agreement under which the partnerships agreed to hold Dr. Barker harmless from any and all debts due from the partnerships. As correctly pointed out by respondent any part of a partner's liability which is assumed by his partnership constitutes a distribution to the partner by the partnership. Sec. 752(b). Any gain realized by the partner as a result of the assumption is gain from the sale of a partnership interest. Sec. 731(a). The gain from the sale of a partnership interest constitutes gain from the sale of a capital asset. Sec. 741. Thus in this case if the partnerships assumed Barker's liability of $350,000 he would have a gain equal to the excess of the $350,000 over his basis in his partnership interest as set forth in the statutory notice. Sections 1001(a), 61(a)(2).
The above is all well and good except that it does not determine the year in which the gain, if any, in this case is recognized and under our system of taxation income including capital gains must be determined and reported on an annual basis. Sec. 441(c); ; *160 . Moreover, it is well established that in determining the year in which income should be reported consideration cannot be given to what may or may not happen in a subsequent year. ; ; . The respondent determined that the petitioner realized a gain in 1975 by reason of an assumption by The Madison Company and The Jefferson Company of his debt to the Union Planters Bank. The parties disagree as to whether or not the assumption ever actually occurred. The respondent admits, however, that if it occurred: (1) it was incorporated in an agreement signed by the petitioner in January of 1979 and by the other parties in February of 1979; and (2) that at least part of the consideration for the assumption was the settlement of a lawsuit which was not even instituted until the last of 1975 and was still pending in a local court in 1979.Consequently, whether or not the settlement agreement is valid, the respondent's determination *161 that the gain occurred in 1975 is erroneous. Decision will be entered for the petitioner.
Footnotes
1. In fact, at this time Masterson apparently had an informal agreement with the revenue agent that the latter would accept whatever termination date was agreed upon by Dr. Barker and his former partners.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, during the years in issue.↩
3. But see , affd. .↩